Lionberger v. Krieger.

LIONBERGER, *Assignee*, v. KRIEGER *et al.*, *Appellants*·

1. **Bank Cashier, Bond of**: INCREASE OF CAPITAL STOCK OF BANK: SURETIES. The increase of the capital stock of a bank, *held* not to discharge the sureties on the cashier's bond.

2. ———: ESTOPPEL. Where the cashier's bond recites that he had been appointed by the board of directors, such recital is conclusive on the sureties.

3. **Bank Cashier**: BOND OF. The fact that one was appointed cashier of a bank who was not a director as required by statute (G. S., p. 365, sec. 3), does not render his bond for his fidelity in office invalid.

4. ———: ———. A bank has the right to require a bond of its cashier, although there is no statute requiring it, and the sureties are liable on it as a common law bond.

5. ———: ———. The subsequent enactment of a statute requiring a bond does not affect the validity of such common law bond.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*E. T. Farish* and *F. K. Ryan* for appellant.

(1) The plaintiff in this case has the same rights, and no other, as the Broadway Savings Bank. *Harris v. Babitt*, 4 Dill. 185. The fact that Krieger was not a director and had not been appointed to the office of cashier, was well known to the president and directors of said bank, when the bond was executed by defendants as sureties. (2) The defendants are not estopped to deny the recital in the bond that Krieger had been appointed cashier by the board of directors. Brandt on Suretyship, 42; *Hudson v. Inhabitants, etc.*, 35 N. J. 437; *Thomas v. Burrows*, 23 Miss. 588. The doctrine in respect to *de facto* cashiers or officers, can only be invoked where the public is concerned. *Currie v. Mut.*

*Ass'n*, 4 Her. & Munf. 346.    (3) The bond is inoperative because when Krieger was retained· in office after the first year, it was by resolution and not by ballot, and it was when he was ineligible to the position because not a director.    Thompson on Offices, 515 ; 1 Allen, 339 ; 1 Peters, 46 ; *Mayor, etc., v. Crowell*, 40 N. J. (L.) 212. (4)    The increase of the stock released the sureties on the bond.    Thompson on Offices, 531 ; Brandt on Suretyship, 461 ; *Grocery Bank v. Kringman*, 16 Gray, 475. *Blair v. Perpetual Ins. Co.*, 10 Mo. 566 ; *Home Savings Bank v. Traube*, 6 Mo. App. 221 ; *State to use of Carroll v. Roberts*, 68 Mo. 234 ; *Miller v. Stewart*, 9 Wheat. 702.    (5) When the law of 1877 (R. S. 1879, sec. 919), went into effect, it superseded any by-law of the bank, and required a new bond in conformity with its provisions.    (6) The action of the board of directors in accepting from Krieger the old bond, after the death of Fortune, operated to release the securities remaining thereon.

*Hough, Overall & Judson* also for appellants.

(1)    The rule is inflexible, both at law and in equity, that the surety is not to be held liable beyond the precise terms of his contract, and is never to be implicated beyond his specific engagement.    *Prior v. Kiso*, 81 Mo. 249 ; *Nofsinger v. Hartnett*, 84 Mo. 549 ; *Ludlow v. Simonds*, 2 Carne's Cases, 57 ; Brandt on Suretyship, secs. 79, 80 ; *State ex rel., etc., v. Boone*, 44 Mo. 262 ; *Miller v. Stewart*, 9 Wheat. 680 ; *State v. Meday*, 17 Ohio, 565.    (2) The increase of the capital stock of the bank changed the contract and discharged the sureties. *Grocer's Bk. v. Kingham*, 1 Gray, 474.

*John D. Davis* and *G. A. Madill* for respondent.

(1)    The section of the statute governing savings

banks (G. S. 1865, chap. 68, sec. 3), which directs the cashier to be selected from among the directors, does not vitiate this bond, though the cashier was not a director. It is a ground of complaint which the state alone can make. *State v. Cooper*, 53 Miss. 615. This provision contains (as to selection of cashier), no prohibitory or negative words, and announces no penalty or other consequences, if it is not complied with; it is, therefore, simply directory and not mandatory. *Bank of Brighton v. Smith*, 5 Allen, 413–417; *State ex rel. Att'y Gen'l. v. Mead*, 71 Mo. 266–269; *West v. Ross*, 53 Mo. 350–354; *City of Cape Girardeau v. Riley*, 52 Mo. 424; *City of St. Louis v. Foster*, 52 Mo. 513; *Jump v. McClurg*, 35 Mo. 193–196; *Hicks v. Chouteau's Adm'r*, 12 Mo. 341. (2) The defendants are estopped by the recitals of the bond from claiming exemption from its obligations by reason of the fact that the principal was not eligible to the position of cashier, or that he was not duly elected. *Barada v. Carondelet*, 8 Mo. 644—649; *Western Boatmen's Benevolent Ass'n v. Kribben*, 48 Mo. 37–43; *Hundley v. Filbert*, 73 Mo. 34; *Commonwealth v. Teal*, 14 B. Monroe, 29; *Williamson v. Woolf*, 37 Ala. 298; *Sprowl v. Lawrence*, 33 Ala. 674–688; *Green v. Wardwell*, 17 Ill. 278; *Jones v. Scanland*, 6 Humph. 195; *United States v. Maurice*, 2 Brock. 97, 113; *Crawford v. Howard*, 9 Geo. 314; *Stephens v. Crawford*, 1 Kelley, 574; s. c., 3 Kelley, 499; *Iredell v. Barbee*, 9 Iredell, 250; *Aulanier v. Governor*, 1 Texas, 653; *Mayor of Homer v. Merritt*, 27 La. Ann. 568. (3) The sureties upon the bond of a *de facto* officer, as well as the officer himself, are estopped to deny the validity of his appointment, when sued for money received by him in his official capacity. *Taylor v. State*, 51 Miss. 79; *State v. Cooper*, 53 Miss. 615; *Boone Co. v. Jones*, 54 Ia. 699; *State v. Rhoades*, 6 Nev. 352; *Monteith v. Commonwealth*, 15 Gratt. 172; *People v. Jenkins*, 17 Cal. 500; *Town of Lyndon v. Miller*, 36 Vt. 329; *State v. Bales*,

36 Vt. 387; *Shroyer v. Richmond*, 16 Ohio St. 455; *Marshall v. Hamilton*, 41 Miss. 229; *Jones v. Scanland*, 6 Humph. 195. (4) The act of 1877, concerning savings banks (1 R. S. 1879, sec. 917), providing that cashiers shall be required to give bond conditioned as therein directed, did not vitiate the bond in suit, because not in exact conformity therewith. This statute is also merely directory and not mandatory. *Bank of Brighton v. Smith*, 5 Allen, 417, and cases cited, under point (2). (5) Though bond were not good as a statutory bond, yet, if it contravenes no rule of law or of public policy, it is good as a common law bond. *Henoch v. Chaney*, 61 Mo. 131; *Graves v. McHugh*, 58 Mo. 499; *Barnes v. Webster*, 16 Mo. 258-265; *Bank of Brighton v. Smith*, 5 Allen, 413-415; *Grocer's Bk. v. Kingman*, 16 Gray, 474; *United States v. Bradley*, 10 Pet. 343. The bond sued on is in substantial compliance with the provisions of section 917, Revised Statutes, 1879. (6) The bond in suit continued obligatory during the entire time Krieger, Jr., acted as cashier. (7) A bond given to secure the faithful performance of an officer's duties during his continuance in office, whether under present appointment, or any re-appointment, is obligatory after expiration of first appointment. De-Colyar on Guarantees, 232; *Augero v. Keene,* 1 M. & W. 390; *Long v. Seay*, 72 Mo. 648; *Savings Bk. v. Hunt*, 72 Mo. 597. (8) The death of James Fortune, one of the securities on said bond in 1874, did not avoid the bond or release the sureties from further liability. (9) The fact that the capital stock of the Broadway Savings Bank was increased after the execution of the bond sued on, and that part of such increased capital was paid in, does not release the sureties. Morse on Banks and Banking (2 Ed.) 241; *Bank of Wilmington & Brandywine v. Wollaston*, 3 Harrington, 90, 96; Thompson on Liability of Officers, 532; *Morris Canal, etc., Co. v. Van Vorst's Adm'x*, 21 N. J. L. 100; *Railway*

*Co. v. Goodwin,* 3 Wels., Hurl. & Geo. 320 ; *Gaussen v. U.S.,* 97 U. S. 584 ; Brandt on Suretyship and Guaranty, secs. 343, 344 ; *Strawbridge v. B. & O. Ry.,* 14 Md. 360 ; *Exster Bk. v. Rogers,* 7 N. H. 21, 27, 31 ; *U. S. v. Woodman,* 1 Utah, 265 ; *Commonwealth v. Holmes,* 25 Gratt. 771 ; *Howe Sewing Mach. Co. v. Layman,* 88 Ill. 39.

BLACK, J.—This is a suit upon the bond of the cashier of the banking corporation of which the plaintiff is the assignee, under the laws of this state relating to voluntary assignments. The bond is dated February 13, 1869, and is in the penal sum of twenty thousand dollars. It is conditioned as follows :

"Now, if the said J. Philip Krieger, Jr., shall well and truly and faithfully perform the duties of cashier of said bank, for and during all the time he shall hold such office of cashier of said bank, and for and during all the time he may continue or act as such cashier of said bank, whether under the present appointment, or under future re-appointments, and shall well, truly and faithfully account for, and render over to said bank all such money," etc., "and shall, while he continues in such service, either under the present appointment, or any future re-appointment, faithfully, and to the best of his ability, perform all trusts reposed in him, and all duties devolved on him by the law of the land, or by any by-law, rule, order or resolution of said board, now existing or hereafter made, enacted or adopted, not inconsistent with the laws of the land, then," etc.

Krieger entered upon his duties and continued to act as cashier until and during the year 1878, under annual re-appointments, made by resolution of the board of directors at the annual election of officers. In 1878, and while acting as such cashier, he made breach of the conditions of the bond to many times the amount of the penalty, the circumstances of which need not be stated.

1. The bank was organized in February, 1869, under the general laws of this state, with a capital stock of two hundred and fifty thousand dollars, which was increased in April of that year to three hundred thousand dollars; twenty per cent. of the stock, and no more, was paid in. The sureties contend that because of this increase during the first year they are released from all liability on the bond. A surety has an undoubted right to rely upon the letter and strict terms of the bond. "It is not sufficient that he may sustain no injury by a change in the contract, or that it may be even for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal." The rule thus stated in *Miller v. Stewart*, 9 Wheat. 702, has been again and again asserted here and elsewhere by one form of expression and another. But this does not mean that the fair import of the obligation is to be disregarded. Another rule equally binding upon the courts is that in the construction of the contract of a surety, as well as of every other contract, the question is : what was the intention, of the parties as disclosed by the instrument read in the light of the surrounding circumstances ? Brandt on Suretyship, sec. 80. In the application of these rules of law appellants place much reliance upon the case of *Grocer's Bank v. Kingman et al.*, 16 Gray, 476. There the stock was increased from $300,000, first, to $500,000, and then to $750,000, because of which the sureties on the cashier's bond were held to be discharged. The court observed, "the risk of the sureties was thereby very greatly enhanced, especially as they undertook to save the bank harmless from every loss that might arise from the cashier's mistakes as well as losses arising from his fraud," etc. Because of the liability to answer for mistakes the court distinguished that case from *Bank v. Wollaston*, 3 Harr. 90. In that case the bond was made in 1833, and the stock was increased in 1837, by

act of the legislature. The sureties of the cashier con-, tended that they were thereby released. The court said : "The simple answer to the proposition is that there was no enlargement of the duties of the officer. The sphere of his duties was the same, although the subject matter of his charge might be increased, which is no more than what happens from day to day, from fluctuation in the amount of deposits." In a recent case decided by the Supreme Judicial Court of Massachusetts (*Railroad v. Loring*, 19 Reporter, 436), the bond was conditioned for the faithful performance of the duties of a ticket agent "which are, or may be, imposed upon him under this or any future appointment." The agent's salary was increased from one thousand to eighteen hundred dollars per year. The stock of the company was increased from $2,853,400 to $4,667,600. At first he sold tickets over one thousand and forty miles of railroad, and for three steamboat lines ; the business was increased to twenty-two hundred and fifty miles of railroad and five steamboat lines. Notwithstanding these changes the sureties were held not to be discharged. The reasons assigned are that there was no change in the office, that the nature of the duties remained the same, and that the increase of business was fairly contemplated by the bond, looking at the character of the position which the agent held. See also *Ry. Co. v. Goodwin*, 3 Wels., Hurl. and Gor. 320 ; *Morris Canal, etc., v. Van Vorst's adm'r*, 21 N. J. L. 100 ; *Strawbridge v. Ry.*, 14 Md. 360.

The stock, it is conceded, was increased in pursuance of section two, chapter sixty-two, General Statutes, and hence, by virtue of a vote of the directors made in compliance with a vote of the stockholders held in conformity with the by-laws. It is not contended that the sureties would have been released had the whole of the two hundred and fifty thousand dollars been called in, for that, it is conceded, would have been within the

letter of the bond, so it might be urged that the stock could only be increased by some "by-law, rule, or resolution of the board," based, of course, upon a vote also of the stockholders. But we do not place our result on so narrow a ground. The bond must be understood and read in the light of the then existing law. It must have been in the contemplation of the parties that the bank would enlarge its business by all lawful ways and means, not going beyond a banking business. This it could do, if desired, by increasing its stock. The conditions of the bond are broad, and look to the future and to the making of additional by-laws and rules. That this increase of stock was fairly within the contemplation of the bond, we think, is clear, and the court might well have so declared in its instructions.

2. The statute (G. S., sec. 3, p. 365), devolved the management of the business of the corporation upon a board of directors, "from whom there shall be designated by themselves a president, cashier and secretary, who shall hold their offices for one year, and until their successors are duly elected and qualified." The minutes of the meetings of the board of directors seem to show that Krieger was elected cashier on January 21, 1869 ; but the records also show that at a second meeting of the incorporators, held on the twenty-sixth of that month, directors were elected, and at the same time the stockholders elected Krieger cashier. The directors, however, fixed the amount of the bond on February 10, and approved the same on March 2, so that they at least approved the appointment, even if not made by them. Besides this, the bond recites that he had been by the board of directors appointed cashier, and that is conclusive in this action on the bond. But the further conceded fact is that Krieger was not a director at any time until January, 1878, when he was duly elected one of the board. Though a constable be appointed in a district in which he did not reside, and the law declared

that no person should be appointed unless a citizen of the district, yet it was held if he gave bond and incurred liabilities as constable, his sureties were liable on the bond. *Commonwealth for Harris v. Teal,* 14 B. Mon. 29 ; *Jones v. Gallatin County,* 78 Ky. 491. In a suit upon an officer's bond, where he is only an officer *de facto,* neither he nor his sureties can allege that he was not an officer *de jure ;* they are estopped to deny their liability on the bond. 33 Ala. 688 ; 37 Ala. 304 ; 54 Vt. 401. It is true these were public officers, but the appointment of Krieger, though he was not a director, was not a prohibited act, and he certainly was cashier for all purposes, and his acts binding as such, We do not see how the fact that he was not a director can make invalid the bond which he gave for his fidelity while in office.

3. At the time the cashier was first appointed the statute did not in terms require a bond, but the bank had an undoubted right to take a bond, and the sureties are liable on it as a common law bond. The act of 1877 did require the cashier to give a bond before entering upon the duties of the office, and prescribed the conditions (R. S. 1879, sec. 917), but the statute did not have the effect to make void any common law bond given by the officer, and the present bond, in plain terms, is made to cover future appointments. It is not contended that any statutory bond was even given at all. Nor did the death of Fortune, in 1874, release the sureties.

We see no reason why the judgment in this case should be disturbed. It is affirmed. All concur.