THE SPRINGFIELD LIGHTING COMPANY, Respondent, v. B. F. HOBART, Appellant.

Kansas City Court of Appeals, June 2, 1902.*

1. **Principal and Surety: STRICT INTERPRETATION: CHANGE OF CONTRACT: INTENTION.** A surety has the right to stand upon the strict terms of his obligation, and is not liable unless the words make him so; but beyond this his undertaking must be construed, like any other contract, according to the intention of the parties.

2. ———: **CORPORATIONS: CONSOLIDATION: CONSENT.** When two business corporations are consolidated they produce a new legal entity which succeeds to all the rights and liabilities of both the former corporations, and in that respect is but their continuance; and a surety on a bond to one of the consolidating concerns enters into his contract with knowledge of the rights of consolidation, and thereby consents thereto, and he remains liable for the default of his principal to the new corporation as he was to the original concern. (Cases considered and distinguished.)

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Adiel Sherwood* for appellant.

(1) The liability of the surety depends upon the identity of the contract, and the identity of the contract depends upon the identity of the. obligee and the time, place, terms and conditions therein named and stated. The liability of the surety is always strictly construed, and any variation of the contract which changes the identity of person, time, place, terms and conditions, without his consent, releases the surety. Miller v. Stewart, 9 Wheat. 680; McMicken v. Webb, 6 How. (U. S.) 292; Martin v. Thomas, 24 How. (U. S.) 315; United

*Certified to the Supreme Court under certiorari and publication held to await decision. 173 Mo. 398.

States v. Boyd, 15 Pet. 187; Smith v. United States, 2 Wall. 219; United States v. Ulrici, 111 U. S. 38; United States v. Freel, (C. C. A.), 99 Fed. —; Nisbet v. Smith, 2 Bro. Ch. R. 579; Rees v. Berrington, 2 Ves. Jr. 540; Boultby v. Stubbs, 18 Ves. 20; Nofsinger v. Hartnett, 84 Mo. 549; Ludlow v. Simond, 2 Caines Cas. 1; Lang v. Pike, 27 Ohio St. 498; State v. Medary, 17 Ohio 565; Winston v. Rives, 4 Stewart and Porter (Ala.) 269; Morgan Co. v. Selman, 6 Ga. 440; Nolley v. Callaway County Court, 11 Mo. 463; State to use v. Boon, 44 Mo. 254; Blair v. Ins. Co., 10 Mo. 559; Weston v. Barton, 4 Taun. 673; Wright v. Russell, 2 Black. 934; Parker v. Park, 1 Term; Billair v. Ellsworth, 3 Camp. 52; Cranor v. Reardon, 39 Mo. App. 306; Sharp v. Bedell, 5 Gilm. (Ill.) 88; Myers v. Parker, 6 Ohio St. 501; Land v. Pike, 26 Ohio St. 498; State to use v. Thomas, 19 Mo. 613; State v. Sandusky, 46 Mo. 381; Orrick v. Vahey, 49 Mo. 428; Fisher v. Cutter, 20 Mo. 206; Glover v. Robbins, 49 Ala. 219; White v. Hass, 32 Ala. 430; Crane Co. v. Specht, 39 Neb. 123; Dance v. Girdler, 4 Bos. & Pul. 34; Bensinger v. Wren, 100 Pa. St. 500; Bank v. Kaufman, 93 N. Y. 273; Bank v. Diefendorf, 90 Ill. 396; Walsch v. Bailie, 10 Johns. (N. Y.) 180; Pennoyer v. Watson, 16 Johns. (N. Y.) 100; Taylor v. Wetmore, 10 Ohio 491; Taylor v. McClung, 2 Houst. 24; Burge on Suretyship, ch. 3; Grant v. Naylor, 4 Cranch 224; Nesbitt v. Turner, 155 Pa. St. 439; Warden v. Ryan, 37 Mo. 466; Reese v. United States, 13 Wall. 13; Bank Assn. v. Conklin, 90 N. Y. 116; Fellows v. Prentiss, 3 Denio 521; Ward v. Stahl, 81 N. Y. 406; Barnes v. Barrow, 61 N. Y. 39; Brickhead v. Brown, 5 Hill 635; McClusky v. Cromwell, 11 N. Y. 598; Taylor v. Jester, 23 Mo. 244; Lord Arlington v. Merrick, 2 Saund. 411; McCartney v. Ridgway, 160 Ill. 129; Bauer v. Cabanne, 105 Mo. 110; Baker v. Merryman, 97 Ind. 539; State v. Blake, 2 Ohio St. 147; Brandt on Suretyship, sec. 121; Bridges v. Blake, 106 Ind. 335; Oil Co. v. Arnestad, 34 L. R. A. 861; 2 Bates on Part.,

secs. 648-655; Assurance Co. v. Bald, 6 Adol. & Ell. 514; Ins. Co. v. Scott, 81 Ky. 540; Bank v. Hall, 101 U. S. 43; Ins. Co. v. McElroy, 83 Fed. Rep. 641; Robinson v. Berryman, 22 Mo. App. 509; 1 Brandt, Suretyship & Guaranty (2 Ed.), secs. 117, 118, 119, 122, and vol. 2, secs. 385, 386, 387, 388, 389, 392, 393. (2) Compliance with section 1334, R. S. 1899 (2786, R. S. 1889) produces "one corporation" the same as if an original application were made upon and under articles of association under the statute. State ex rel. v. Lesueur, 145 Mo. 322. (3) The Metropolitan Electric Railway Company was not required to perform the contract after the consolidation and certainly the case is stronger in favor of the surety than in favor of the principal. Lansden v. McCarthy, 45 Mo. 106; Hardy Implement Co. v. Iron Works, 129 Mo. 222; Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379. And even so, the contract which the surety agreed to secure could not be performed, for that the obligee therein named, no longer existed.

*Jas. R. Vaughan* for respondent.

(1) The contract of a surety should be construed like any other contract with a purpose, however, of holding him only to the extent of the exact terms of his obligation with no strained construction to relieve him from it. Beers v. Wolf, 116 Mo. 179. (2) Further, as to effect of the consolidation, and that it makes no new corporation so far as creditors and debtors are concerned, see 1 Thompson on Corporations, sec. 365, and note. Miller v. Lancaster, 5 Cold. 574; Thompson v. Abbott, 61 Mo. 176; Bank v. Phelps, 97 N. Y. 44; 2 Elliott on Railroads, sec. 329; Berry v. Railroad, 52 Kan. 759; Morawetz on Private Corps., secs. 809, 955-6. (3) As showing that the new company is the old company, it may be stated that subscription made to one railroad prior to its consolidation with another road,

will pass to the new company and may be collected by it. Scott v. Hasheer, 94 Ind. 1; State ex rel. v. Greene County, 54 Mo. 540; Railroad v. Philips, 25 Kan. 261; East Lincoln v. Davenport, 94 U. S. 101; Railroad v. Brown, 26 Ohio St. 223; Sparrow v. Railroad, 7 Ind. 369; Bates County v. Winters, 112 U. S. 325; Chickaming Twp. v. Carpenter, 106 U. S. 663. (4) Exemptions from taxation granted by charter or otherwise to one of the original companies will pass to the new company and be enforcible by it after the union. 2 Elliott on Railroads, secs. 330 and 886; 3 Wood's Railways, page 1685 and note; State ex rel. v. Railroad, 99 Mo. 30. (5) It is held that a change in the charter of a corporation, even to such an extent as to substantially change the character or objects of the corporation, will not release the stockholder on his subscription. Railroad v. Hughes, 22 Mo. 291; Ins. Co. v. Beckmann, 47 Mo. 93; College v. Robertson, 67 Mo. App. 329.

SMITH, P. J.—It appears from the allegations of the plaintiff's petition that "The Springfield Electric Lighting Company," the "Springfield Gas Light Company" and the "Metropolitan Electric Railway Company" were each corporations created and organized under the provisions of article 8, chapter 42, Revised Statutes 1889, and that the first two of them were, on the 30th of June, 1893, under the authority conferred by section 2876 of said article, consolidated and united under the name of the Springfield Lighting Company, the plaintiff. It further appears that sometime prior to the said consolidation, the said Metropolitan Electric Railway Company entered into a written contract with the said Springfield Electric Light Company whereby the former agreed and bound itself to furnish and supply the latter power to operate its lighting apparatus, as therein specified, for a period of ten years. It still further appears that at the time of the entering into said contract, the said Metropolitan Electric Street

Railway Company and Hobart, the defendant, entered into a certain bond, by which they bound themselves to pay the said Springfield Electric Light Company the sum of three thousand dollars, conditioned that if said Metropolitan Electric Railway Company should do and perform, on its part, all the conditions required of it by the terms of said contract fully and completely, then said bond was to be void, otherwise to remain in full force. It is also further disclosed by the allegations of the petition that at the time the said contract was entered into, the Springfield Electric Lighting Company was engaged in furnishing light both to the city and to individuals therein, and that after the creation of the consolidated company, the plaintiff, "holding and enjoying all the rights, privileges, power, franchises and property belonging to each of the incorporations out of which it was formed," continued to furnish light to the said city and individuals therein, as the said Springfield Electric Light Company had done, and that the said Metropolitan Electric Railway Company supplied it with power, and otherwise complied with the requirements of said contract as it had done before the consolidation, until a certain named date, when it refused further compliance, etc.

The defendant interposed a demurrer to the petition on the ground that it shows upon its face that the alleged bond, upon which defendant was security, was given to the Springfield Electric Lighting Company as obligee, while the plaintiff in this case is a separate and different legal entity. The court overruled the demurrer, and the defendant having elected to stand thereon, and declining to plead further, judgment was given for the plaintiff. The defendant, by his appeal, has brought before us for review the action of the trial court in overruling his demurrer to the petition. In support of the ground of such demurrer, the defendant contends (1) that the defendant, as surety, bound himself to "indemnify the Springfield Electric

Lighting Company for the failure of the Metropolitan Electric Railway Company to supply electric power to that company, but did not bind himself to indemnify the plaintiff, another and different legal entity, and (2) that by reason of the amalgamation of the Springfield Electric Lighting Company with the Springfield Gas Light Company, and by which another company was formed, it was made impossible for the Springfield Electric Railway Company to furnish electric power to the Springfield Electric Lighting Company. If these contentions can be sustained, it is quite manifest that the demurrer should have been sustained, and whether or not they should be, is to be determined by the construction placed upon the contract of suretyship.

I. It appears that the rule prevailing in respect to ordinary contracts of suretyship is that the surety is the favorite of the laws, and has the right to stand upon the strict terms of his obligation. Brandt on Suretyship, sec. 97; Bayless on Sureties, 144, 145, 260. He can not be carried beyond his contract; the contract made by the parties must be judged of and not another substituted in its stead; it can not be varied without his consent, and a surety for a definite engagement shall not be extended to an indefinite one. Ludlow v. Simond, 2 Caines Cases, 1. It was declared by the Supreme Court of the United States in Miller v. Stewart, 9 Wheaton 680, that "nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he sustain no injury by a change in the contract, or that it even may be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and that variation is made, it is fatal."

In State v. Medary, 17 Ohio 565, it is said: ''The bond speaks for itself, and the law is that it shall so speak and that the liability of the surety is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If a bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way in order that it may prevail.''

The two last above excerpts were quoted with approval in Nofsinger v. Hartnett, 84 Mo. 549. And the case from which the former (Miller v. Stewart) is quoted has been referred to approvingly in Lionberger v. Krieger, 88 Mo. 160, and in Blair v. Ins. Co., 10 Mo. 560. The rule of *strictissimi juris* as applicable to the interpretation of the contracts of sureties, was first announced in this State in the opinion of Judge SCOTT in Blair v. Ins. Co., supra, and all the subsequent cases—cited in defendant's brief—have uniformly and unvaryingly followed it, so that it (the rule) may be said to have become firmly established in the jurisprudence of this State.

And while the contract of a surety is to be construed *strictissimi juris,* which means that it can not be altered without his consent, and that he is only bound to the extent that he thereby agreed to be so bound, yet, aside from this, it must be construed like any other contract, *id est,* according to the intention of the parties. Beers v. Wolf, 116 Mo. 179; Harburg v. Kumpf, 151 Mo. 16.

II. Up to the time of the consolidation there was a complete performance of the contract on the part of the Metropolitan Electric Railway Company. The non-compliance or default complained of took place after such consolidation, so that the question arising, and decisive of the case is, whether or not the defendant, under his contract of suretyship, is bound to in-

demnify the consolidated corporation—the plaintiff—against any damage or loss sustained by it in consequence of the failure of the Metropolitan Electric Railway Company to furnish to it the electric power which it—the said Metropolitan Electric Railway Company—had agreed to furnish under its contract with the Springfield Electric Lighting Company. A corporation of the class to which the Springfield Electric Lighting Company belonged, may, under the statute (sec. 971, R. S. 1899) change its name without in "anywise affecting its rights, privileges or liabilities;" but we have no such case here. On the contrary the plaintiff is a legal entity created by the consolidation, under the statute (sec. 2786, R. S. 1889; sec. 1334, R. S. 1899), of two corporations whose business was of the same general nature. The plaintiff was the issue of this union, and can not be said to be either the one or the other of them, any more than a child can be said to be either its father or mother. And the section of the statute last cited declares that the result of such consolidation shall be to create "*one consolidated corporation* holding and enjoying all the rights, privileges, power, franchises and property belonging to each." The effect of the agreement of consolidation under the statute (sec. 1334) is, as we think, to transfer all the "rights, privileges and property" of each of the consolidating corporations to the new corporation.

Included in this transfer was the contract between the Electric Railway and the Electric Light Company, which carried with it, as an incident, the undertaking of the surety, the defendant, even though said undertaking was not in express terms transferred with the said principal obligation. The manifest purpose of the statute in such cases is to give the consolidated corporation the benefit of all the rights of every kind, including such as that here, and a right of action thereon. And this construction of the statute finds support, in adjudications somewhat similar to this.

Cady v. Sheldon, 38 Barb. 103; Claflin v. Ostrom, 54 N. Y. 581; Craig v. Parkis, 40 N. Y. 181; Waldron v. Harring, 28 Mich. 493; Bank v. Carpenter, 41 Iowa 518; R. S. 1899, sec. 540, and cases cited in note b. In an English case (Railway v. Cochrane, 9 Wels. Hurl & Gor. 197) where a surety executed a bond conditioned for the faithful service of a clerk of a railway company, and during the continuance of the service that company and another company were consolidated under a statute which provided that all bonds, etc., entered into in favor of the old companies should be effectual in favor of the new, it was held that the surety was liable to the latter for the default of the clerk after the consolidation since the undertaking of the surety was in no way enlarged by such consolidation. It has been held in this State that where a consolidation of two or more railway companies had taken place under statutes somewhat analogous to that here, that the effect of such consolidation was to dissolve the corporations so consolidated and to create a new corporation. State v. Lesueur, 145 Mo. 322; State v. Railway, 99 Mo. 41; Evans v. Railway, 106 Mo. 594. Ordinarily the effect of the consolidation of two or more corporations into one would be to dissolve all of them and create a new corporation, unless there be something in the statute authorizing the consolidation providing that it shall have a different effect.

In Kinion v. Railway, 39 Mo. App. 382, it was said: "By the contract of consolidation all property belonging to the old companies, including their corporate privileges and franchises, are transferred to the consolidated company, and there is nothing left to sustain the corporate life of the original corporations. . . . The old companies by their voluntary act completely merge their separate corporate existence and, strictly speaking, a new entity is thereby formed. . . . Literally speaking, it is a new corporation, but substantially it is but the continuation of the old

companies under the new name. Evans v. Bank, 79 Mo. 182. . . . Technically speaking, however, and for general purposes, it may be conceded that the consolidated company is a new corporation, but touching the business of the old companies and the rights of their respective creditors, we think the consolidated company ought to be regarded as the continuation of the old companies under a new name, and that, to that extent, it ought to be regarded as a new corporation.'' And a similar statement of the law is to be found in State v. Garroutte, 67 Mo. 445, and in section 956 of Morawetz on Private Corporations. In Kinion v. Railway, 39 Mo. App. 574, it was said: ''An examination of the decisions will, we think, show that in a judicial sense, and so far as regards any right of action that existed against either of the corporations prior to their being united, the effect of the consolidation is not more than a change of name. . . . The new corporation succeeds to the proprietary rights of the old without any new conveyances.'' Thompson v. Abbott, 61 Mo. 176; State v. Greene County, 54 Mo. 540; Berry v. Railway, 52 Kan. 759.

In 1 Thompson on Corporations, section 365, it is stated to be the general rule that the new company succeeds to the rights, duties, obligations and liabilities of the constituent companies whether arising *ex contractu* or *ex delicto*. And so it has been held that such company succeeds to whatever rights each of the old companies possessed in respect to municipal aid, and that where such aid had been voted to either of the constituent companies before the consolidation, it was entitled to the bonds. Smith v. Clark County, 54 Mo. 58; State v. Greene County, 54 Mo. 540; Railway v. Marion County, 36 Mo. 294; Henry County v. Nicolay, 95 U. S. 619; Callaway Co. v. Foster, 93 U. S. 567; Scotland Co. v. Thomas, 94 U. S. 682.

And it has been held further that the new company is the heir to the obligation of the old and if

the former refuse to carry out the obligations of the latter, the obligee can maintain an action against it for resulting damages. Ins. Co. v. Railway, 149 Mass. 214; 1 Thompson on Private Corp., sec. 382.

No reason is seen why a consolidated business corporation, created under said section 1334, Revised Statutes 1899 (sec. 2786, R. S. 1889), will not "hold and enjoy all the rights, privileges, franchises and property," and be subject to all the liabilities to the same extent as a railway company which is the result of the amalgamation of two or more companies under section 2567, Revised Statutes 1889, nor why what has been said by us in relation to the *status* of the latter will not apply as well to the former. From an examination of the numerous authorities to which we have been cited by counsel, we can reach no other conclusion than that where two or more business companies are consolidated under section 1334, that the constituent corporations become dissolved or extinguished and that the amalgamated corporation is a new corporation, but that touching the business of the old corporations, and as to their respective debtors and creditors, the consolidated company is to be regarded as the continuation of the old companies under a new name and that as to the defendant, it is to be regarded as if it had been named as obligee in the bond in the first instance.

The bond here must be understood and read in the light of the existing law. To consolidate is one of the statutory powers of business corporations, and parties contracting with them are presumed to know that such is the law of their creation. Lionberger v. Krieger, 88 Mo. 160; Hanna v. Railway, 20 Ind. 30. When we view the contract of suretyship in its entirety, that is to say, with the provision of section 1334, Revised Statutes, read into it, we experience no difficulty in reaching the conclusion that the obligation of the defendant extended to the plaintiff, and covered the default of the Springfield Electric Railway Company occurring

after the consolidation. By such contract it was, as we think, understood that the obligee therein was accorded the right and privilege to do the things authorized by that part of such contract as was supplied by the statute, or, in other words, the obligor by the contract in effect said to the obligee, "If you, in the course of your business deem it for your interest to consolidate with another company and continue in business under a new name, you hereby have my consent to do so." The consolidation and merger of the obligee may, therefore, be said to have been done with the consent and by the authority of the defendant. It results that if there was an alteration in the contract as to the name of the obligee, brought about in that way, it was made with the consent of the obligor therein given.

It seems that after the consolidation took place the Springfield Electric Railway Company continued to furnish electric power to the new company as it had to the old. It not only supplied power but made out bills and collected the compensation allowed by the contract of the new company just as it had of the old. These acts of the parties afford a basis on which to rest the construction of the contract as made by us. Wharton on Contracts, sec. 653.

Crane v. Specht, 39 Neb. 123, was not where the change in the name of the obligee was brought about by a consolidation of two corporations. The change was doubtless accomplished under a statute like our section 971, Revised Statutes. It was held that the change in the name of the obligee corporation deprived it of the right to recover on the contract of guaranty given it by the defendant in its former name. Whether or not that case was rightly decided we need not stop to consider, since it does not appear that there were any such statutory provisions applicable to it as those which have largely influenced our decision in this.

The case most nearly like that before us is that of Railway v. Hawkins, 149 Pa. St. 121. It was where

one railway company, which had leased another, took a bond with sureties from one of its employees; and subsequently the two companies were consolidated under the statute, and under a new name the same business was continued. It was held that the sureties were liable for the employee's defalcation after the consolidation.

After a full examination of the points and authorities urged upon our attention by the defendant, we have not been persuaded that the objections suggested in his demurrer to the plaintiff's petition were well taken, and it therefore follows that the judgment must be affirmed. All concur.