*187 OPINION.
Lansdon:
The petitioner having abandoned its claim for deduction from its income of the $7,720.48 received for use and occupancy and bundle insurance, the only question before the Board for decision *188 is whether the amount collected for loss of machinery and equipment in excess of the book value thereof at the time of the fire was so invested as to require that it be included in income, within the purview of section 234 (a) (14) of the (Revenue Act of 1921.
Section 234 (a) (14), insofar as relevant here, is as follows:
Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* ******
(14) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, * * * and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, * * * then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds.
We have found as facts that the Excelsior Laundry Co. owning the machinery and equipment destroyed, immediately affiliated itself with the Leader Laundry Co. and was continuously so affiliated until December 22, 1921, when by the joint and several action of the two companies, they were consolidated into one company bearing the names of both; that a tax return was rendered by and for the consolidated company for the full year, showing on its face that it included the earnings and gains and the disbursements of the original companies during the year, both as independent and affiliated companies, and also of the consolidated company.
The effect of the consolidation was to extinguish the two original companies and establish the consolidated or amalgamated company in their stead. The revised statutes of the State of Missouri for 1919 under which the consolidation was effected, provides as follows:
Sec. 10,165. Consolidation of companies, how effected. — Any two corporations now existing under general or special laws, or which may be hereafter created, whose objects and business are in general of the same nature, may amalgamate, unite and consolidate said corporations and form one consolidated corporation, holding and enjoying all the rights, privileges, power, franchises and property belonging to each, and under such corporate name as they may adopt or agree upon; such consolidation shall be made by agreement in writing, by or under the authority of the board of directors and the assent of the owners of at least three-fifths of the capital stock of each of said corporations, and a certificate of the fact of such consolidation, with the name of the consolidated company, shall be recorded in the office of the recorder of deeds of the city or county in which such corporation is located and a certified copy of such recorded instrument shall be filed in the office of the secretary of state. Provided,, that no such consolidation shall in any manner affect or impair the rights of any creditors of either of said corporations.
The Court of Appeals of the State of Missouri has decided that:
The consolidation produces a new corporation which succeeds to all the rights and liabilities of the old corporations and a surety on a bond to one of the con *189 solidating concerns remains liable for the default of his principal to the new corporation. Springfield, etc., Co. v. Hobart, 98 A. 227, 68 S. W. 942. In a suit pending against one of the consolidating corporations at the time of consolidation, plaintiff may proceed to judgment against the original corporation, and the united corporation need not be made a party. Wells v. Electric Co., 108 A. 607, 84 S. W. 204.
See also Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356; 30 S. W. 163.
If the Excelsior Company had made the purchase of the machinery and equipment direct and installed it in the new building, there could have been no question as to the allowance of the deduction now claimed. Piedmont-Mt. Airy Guano Co., 3 B. T. A. 1009; Cotton Concentration Co., 4 B. T. A. 121; The Davis Co., 6 B. T. A. 281. But, it appears to have loaned all its cash and bonds to the Leader Company. Be that as it may, the money derived from the fire loss was all invested in new machinery which was installed with due expedition in the new building, the erection of which was paid for from moneys borrowed by the two companies on their joint note. The interests of the two companies were identical in that they were both owned by the same stockholders, each having a like interest with each of the other two in the stock, and the officers of the two companies were identical.
Prior to the close of the year for which the return was rendered, the two companies had become amalgamated or consolidated into one, and had ceased to exist as separate entities. But one return, that of the amalgamated company, was rendered for the 12-month period and the respondent accepted it. This indicates that both considered that at the close of the year there was but one of the three legal entities then in existence and that as to matters of Federal income and excess-profits taxes, this one represented both of the others. Under such circumstances, it would be a far cry to hold that the methods resorted to in the expenditure of the gain resulting from the excess of the insurance over the book value of the machinery and equipment destroyed were such as to deprive the petitioner of the benefits of section 234 of the Bevenue Act of 1921. We see nothing in the methods adopted by the two companies destructive of the property rights of either, but even if the methods had been such as to cast a doubt as to the intention of the parties at some time during the year, it is from results rather than methods that the allowance or disallowance of deductions under section 234 (a) (14) must be determined. The property was involuntarily converted into cash as a result of its destruction. The petitioner proceeded forthwith in good faith to expend and did expend the proceeds of the conversion in the acquisition of other property of a character similar or related in service or use to the property so converted. Neither the methods fol *190 lowed by it, nor the results obtained were in contravention of the regulations prescribed by the Commissioner of Internal Revenue under this section made and provided.
Reviewed by the Board.

The deficiency will be determined in accordance with this opinion, on 15 days' notice, wider Bule 50.