HELEN A. BERRY v. THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY.

1. SUPREME COURT—*Directing Judgment.* Where a case-made contains all of the pleadings, the general verdict, the special findings, the motions for judgment, a motion for a new trial, and a sufficient statement of the rulings of the court, the supreme court may direct what judgment the district court should have rendered in the premises.

2. DEATH BY WRONGFUL ACT—*Section 422a of Civil Code, Valid.* Section 422a of the civil code (Laws of 1889, ch. 131, ¿ 1) is not unconstitutional, upon the ground that it is in violation of ¿ 16, art. 2, of the constitution of the state, as it is a new or supplemental act providing how the cause of action, granted by § 422 of the civil code, for the benefit of families of persons killed by the wrongful act or omission of another, may be enforced when the deceased is a nonresident, or

when no personal representative has been appointed. Said section is simply a change of remedy, but not the creation of a new cause of action.

3. WIDOW *May Maintain Action, When.* Where a death of a person was caused by the wrongful act or omission of another, in this state, on the 24th of December, 1887, and no personal representative is or has been appointed, an action is properly brought by the widow of the deceased for the benefit of herself and children, after §422*a* (Laws of 1889, ch. 131, §1) went into force, if commenced within two years after the death complained of.

4. RAILROAD COMPANIES — *Consolidation — Liabilities.* Where two or more railroad companies are consolidated under the statutes of the state, the new or consolidated company is answerable for the obligations of the old or constituent companies, including torts, in the absence of all evidence or stipulations to the contrary.

*Error from Bourbon District Court.*

ON December 24, 1887, Wm. Y. Berry was an engineer of the Missouri Pacific Railway Company, which company at that time was operating the Missouri, Kansas & Texas railway. He ran an engine from Sedalia, Mo., to Fort Scott, Kas., and while on one of his trips he was killed in Fort Scott, Bourbon county, in this state, at a crossing by a train of the Kansas City, Fort Scott & Gulf Railroad Company, which in April, 1888, was consolidated with other railroads under the laws of Kansas, and constituted and became the Kansas City, Fort Scott & Memphis Railroad Company. At the time of the killing, Berry was a citizen and resident of Sedalia, Mo, where he had a wife and two children living. He died intestate, and no letters of administration were ever issued, nor was any administrator of his estate ever appointed in either Kansas or Missouri. On the 23d day of April, 1889, Helen A. Berry, the widow of Wm. Y. Berry, brought her action against the Kansas City, Fort Scott & Memphis Railroad Company, alleging that her husband, Wm. Y. Berry, was run over and killed by the negligent operation of the Kansas City, Fort Scott & Gulf railroad. The jury returned a general verdict for the plaintiff, Mrs. Helen A.

Berry, and assessed the damages at $5,000. They also returned the following special findings:

"Ques. 1. Was the plaintiff the wife of William Y. Berry? Ans. Yes.

"Q. 2. Was said William Y. Berry killed on December 24, 1887? A. Yes.

"Q. 3. Did the said William Y. Berry die without leaving any will? A. Yes.

"Q. 4. Were the plaintiff, Mrs. Berry, and her husband, on December 24, 1887, up to the time of his death, residents and citizens of the state of Missouri? A. Yes.

"Q. 5. What was the age and occupation of the said William Y. Berry at the time of his death? A. Age, 32 years; occupation, locomotive engineer.

"Q. 6. What wages as engineer did said William Y. Berry receive up to and prior to his death? A. At an average of $130 per month.

"Q. 7. Did the deceased, William Y. Berry, maintain his said wife and children before his said killing? A. Yes.

"Q. 8. Was any executor or administrator appointed of the estate of William Y. Berry, deceased? A. No.

"Q. 9. What was the condition of the health of said William Y. Berry at the time of his death? A. Good.

"Q. 10. In what county and state did the death of William Y. Berry take place, on December 24, 1887? A. Bourbon county, Kansas.

"Q. 11. Was the Kansas City, Fort Scott & Gulf railroad constructed and in operation in Bourbon county, Kansas, on December 24, 1887? A. Yes.

"Q. 12. Did the Kansas City, Fort Scott & Gulf Railroad Company consolidate with other railroad companies in April, 1888, and thereby form the Kansas City, Fort Scott & Memphis Railroad Company? A. Yes.

"Q. 13. Was the Kansas City, Fort Scott & Gulf Railroad Company operating the Kansas City, Fort Scott & Gulf railroad on December 24, 1887? A. Yes.

"Q. 14. If said William Y. Berry was killed by the negligence of the Kansas City, Fort Scott & Gulf Railroad Company, on December 24, 1887, in what did that negligence consist? A. First, by not bringing their train to a full stop before reaching a crossing. Second, by running at too high rate of speed on approaching a grade crossing. Third, by the

head brakeman not being at his post on approaching a crossing.

"Q. 15. If Willam Y. Berry was guilty of any contributory negligence, in what did it consist? A. He was not guilty of any contributory negligence."

To the reception of the general verdict, and the special questions and answers thereto, the defendant objected at the time, and the court declined to receive or record the same as a verdict, but permitted the same to be filed, in order that the whole proceedings might appear on the record. Thereupon the railroad company filed the following motion:

"And now that the jury has brought in a general verdict for the plaintiff, together with answers to certain questions propounded by the plaintiff's counsel, the defendant asks the court to instruct and require the jury to bring in a general verdict in favor of the defendant, upon the unquestioned law of the case.     WALLACE PRATT,
         W. C. PERRY,
         C. W. BLAIR,
            *Defendant's Attorneys.*"

To the presentation of said motion and the hearing of the same, the plaintiff, by her attorneys, duly objected, which objection was overruled by the court, and the plaintiff excepted. Thereupon the court sustained the motion, to the sustaining of which the plaintiff duly excepted; and thereupon the court ordered the jury to find for the defendant, and wrote out the following verdict, and called upon the foreman of the jury to sign the same, which he did; and thereupon the jury was discharged. A copy of said verdict is as follows: "We, the jury, find for the defendant.—W. H. GILLETT, *Foreman.*"

Subsequently, the plaintiff filed her petition to set aside the general verdict directed by the court, which was overruled. The plaintiff then asked the court to render judgment in her favor upon the special findings and the general verdict rendered in her favor. This was also overruled. The court then overruled the motion for a new trial by the plaintiff. Thereupon the court rendered judgment in favor of the railroad company and against the plaintiff. The plaintiff, *Helen A. Berry*, excepted, and brings the case here.

*E. F. Ware*, for plaintiff in error:

A foreign administratrix — Mrs. Berry — would have had the right to have brought suit at the time of the killing. 16 Kas. 568; 29 id. 420. The death having been occasioned by the negligence of the railroad company, the power to bring suit resided somewhere. An administratrix bringing suit does not sue as administratrix, because the sum recovered does not belong to the estate. 18 Kas. 46; 29 id. 420. A foreign administratrix is simply an appointee, and would sue, not by virtue of the laws of her own state, but by virtue of the laws of the state of Kansas. As, at the time of the death of Berry, the foreign administratrix had a right to sue in the courts of the state of Kansas, and as the law was afterward amended so that the widow could sue, then the change was simply a change of remedies, and the railroad company being liable anyhow, it has not been injured by the new law.

An attack was made upon the new law in the court below, and the court below held it void, as being retrospective. If it should be stated that, under the former law, an administratrix from Missouri could not sue, we reply that this court can take no judicial notice of what the laws of the state of Missouri are at the time that any suit has been brought or tried. And there was no pleading in this case as to the condition of the laws of the state of Missouri, and, even if there were, the foreign administratrix was simply an appointee, and did not sue as an administratrix.

If, however, this court should be of the opinion that no remedy whatever existed at the time the new law went into effect, we still say that the law was good in its retrospective operation. The law did not impair the obligation of any contract; it enacted no *ex post facto* law; it interfered with no vested rights, because nobody has any vested rights in the killing of human beings with impunity. In no sense of the word does the new law violate any principle of natural justice; in no sense does it violate any principle of public policy. It enforces a moral obligation and right.

"No case has been found where a court has declared a statute law to be void because it conflicted with some undefined right not secured by a written constitution, however valuable that might have been considered." *People v. Gallagher,* 4 Mich. 244; See, also, Const., Bill of Rights, § 18.

In regard to the view which courts take, that legislation of the kind here described is remedial and is constitutional, we refer to the following citations: Wade, Retroactive Law, §§ 24, 83, 214; Cooley, Const. Lim., star pages 361, 371, 373, 581; Endlich, Stat., §§ 283, 284; 3 Kas. 123; 23 N. W. Rep. 689; 1 Atl. Rep. 360; 21 Feb. Rep. 99; 2 Watts (Pa.), 433; 2 Ohio St. 152; 24 id. 554; 5 Am. Dec. 645; 53 id. 575; 16 Kas. 498; 30 N. W. Rep. 478; 33 La. Ann. 709; 41 Ind. 49; 16 Barb. N. Y. 188; 95 U. S. 644; 6 Cent. L. J. 144; 7 id. 226; 3 W. Va. 645.

*Wallace Pratt, W. C. Perry,* and *Chas. W. Blair,* for defendant in error:

Purged of all surplusage, the case stands thus: Plaintiff brought suit for the death of her husband, issue was joined, the testimony all heard, and the court instructed the jury to find for the defendant, which was accordingly done. The plaintiff then brought the case to this court for review, without bringing up the testimony, and asks this court to say that the judge below decided erroneously, without giving this court the testimony on the trial, and thus enabling it to decide intelligently. Will the court do it?

It was claimed before the court below that the act of 1889, pretending to give a right of action to the widow for the wrongful killing of her husband, was an attempted amendment of § 422 of the code, and therefore unconstitutional, because not made as amendments can only be made; in short, that it was in violation of § 16, article 2, of the state constitution. It can scarcely be questioned, we think, that the act of 1889 is an attempt to amend § 422 of the code. It refers to that section by name and number, and gives to the widow, and in certain cases to the next of kin, all the right that § 422

gives only to the personal representatives of the deceased. See *Renter v. Bauer*, 3 Kas. 505; *City of Troy v. Railroad Co.*, 11 id. 519; *Case v. Bartholow*, 21 id. 300; Suth. Stat. Constr. 168; Cooley, Const. Lim., 6th ed., 180.

It was also claimed below that the new act, if constitutionally enacted, could not affect this case. Damages for a tort to the person, resulting in death, were not recoverable at common law, and where a statute gives such right of recovery, it can only be maintained subject to the limitations and conditions imposed thereby. *Barker v. Railroad Co.*, 91 Mo. 91. And such act must be strictly pursued in all suits. 3 Wood's Rly. Law, 1531. See, also, *Coover v. Moore*, 31 Mo. 576; *Barker v. Railroad Co.*, 91 id. 94.

Now, our statute as it existed at the time of the death, § 422, did not give a general right of action, but only stated that the "personal representatives may maintain an action," etc. Therefore the common law was in force as to all persons, including the widow, except the personal representatives, and there never having been "personal representatives" within the legal definition of the term, there was no cause of action at the time or growing out of the death alleged. There being no cause of action, then, at and after the death for more than a year — that is, from December, 1887, to March, 1889 — we suggested the query whether a law thus passed could reach back and give a right of action for a preëxisting death where no right of action had before existed. The alleged law was not simply a change of remedies, but the creation of an entirely new cause of action.

We did not claim, nor did the court consider, the absurdity that the legislature had no power to pass retrospective laws, for they have been enacted and upheld, within certain limits, in every state in the union, including our own; but we did claim that there might be certain retroactive laws so utterly at variance with every legal principle on which wise legislation is founded that their enactment would be beyond the legislative authority, and suggested, as we again suggest, that this pretended law may be one of them.          —

Not only was there no cause for action in favor of the plaintiff for more than a year after Berry's death, but the alleged wrongdoer had "ceased to exist," in the language of this court, and could neither "sue nor be sued" for nearly a year before the enactment of the so-called law and the institution of this suit. *K. O. & T. Rly. Co. v. Smith*, 40 Kas. 192.

This defendant is not liable. The alleged tort was committed by a railroad company "defunct" before the institution of this suit, and before the present defendant had any corporate existence. How, then, can it be made liable? The question is answered in *Whipple v. U. P. Rly. Co.*, 28 Kas. 474. Unless this court was wrong in the Whipple case, it must reach the same conclusion the trial judge evidently did, and therefore affirm his judgment. There is no statute in this state making a consolidated railroad company liable for the debts of the constituent companies, or any of their liabilities, duties or obligations except those due to the state, and the common law in that respect is shown in the Whipple case above cited.

The petition in error should be dismissed. The plaintiff seeks a reversal without bringing up the evidence, which would incontestably prove that she has no case; and we contend that this court cannot even consider the petition in error, in the absence of such testimony, and should dismiss the same upon learning the fact from an examination of the case-made. *Transportation Co. v. Palmer*, 19 Kas. 471.

The opinion of the court was delivered by

HORTON, C. J.: We are called upon to review the action of the trial court upon the case-made. It is insisted by the counsel of the railroad company that the petition in error should be dismissed, because the testimony produced upon the trial is not preserved in the record, and therefore that this court cannot determine whether the trial court committed any error in directing a verdict for the company. The testimony is not before us, and, if the case-made did not con-

tain statements explanatory of the rulings of the trial court, then, upon the authorities cited in behalf of the company, the motion to dismiss would have to be sustained. Section 547 of the civil code, however, specifically provides that

"A party desiring to have any judgment or order of the district court, or a judge thereof, reversed · by the supreme court, may make a case containing a statement of so much of the proceedings and evidence or other matters in the action as may be necessary to present the errors complained of to the supreme court."

In this case, the pleadings, the general verdicts, the special findings, the motions and the judgment are all properly incorporated in the record, and, in addition thereto, a statement is contained of so much of the proceedings as is necessary to present the errors complained of. It appears from the case-made that, upon the trial, the plaintiff introduced her testimony; that the railroad company demurred thereto; that the demurrer was overruled; that the railroad company then introduced its evidence; that the plaintiff introduced her evidence in rebuttal; and that, at the close of all the testimony, the trial judge stated "he had made up his mind the plaintiff could not recover, under the law of the case, and that he should instruct the jury to find a verdict for the railroad company." The plaintiff's counsel then asked "the court that, to avoid another expensive trial, the jury be permitted to make special findings of fact in the case, in order that the whole facts of the case might go to the supreme court, to the end that, if the law and the testimony authorized the judgment in favor of the plaintiff, the supreme court could, upon such facts and the law, direct the judgment to be given." The court granted this request, "and directed such course to be pursued." Thereafter the jury retired, and after agreeing upon a general verdict and the answers to special questions, returned the same into court. When the jury returned their verdict and the answers to special questions, no motion was made to set the general verdict aside, or to set aside any of the special answers. The counsel of the rail-

road company requested the trial court, notwithstanding such general verdict and special findings, to direct a general verdict in favor of the defendant, "upon the unquestioned law of the case." We must therefore assume, upon the record, that "the whole facts of the case" were presented in the court below, and are now presented to us upon the special findings and the general verdict returned by the jury in the first instance. The trial court decided, upon the facts as presented by the jury, that the railroad company was entitled to a verdict in its favor, and acted accordingly. Therefore the only question upon the record for us to pass upon is, what judgment should be given, upon the facts of the case as found by the jury?

1. Supreme court —directing judgment.

It is the contention of the plaintiff, under the provisions of §§ 422 and 422a of the civil code, and from the obligation of the Kansas City, Fort Scott & Memphis Railroad Company, as successor of the Kansas City, Fort Scott & Gulf Railroad Company, one of the constituent corporations of which it is composed, that the trial court should have rendered judgment in favor of the plaintiff and against the railroad company upon the general verdict first returned by the jury, and their special findings of fact. On the other hand, the railroad company insists that § 422a is unconstitutional, because it is an attempted amendment of § 422 of the code, in violation of § 16, art. 2, of the constitution, which ordains that "no law shall be revised or amended unless the new act contains the entire act revised or the section or sections amended, and the section or sections amended shall be repealed," and that, if § 422a is constitutional, it cannot affect this case, because there was no cause of action thereunder on the 24th of December, 1887, as that act was not passed until March 22, 1889—more than a year after the death of Wm. Y. Berry. It is further claimed, that the Kansas City, Fort Scott & Memphis Railroad Company is not answerable for the debts, obligations or torts of the Kansas City, Fort Scott & Gulf Railroad Company, in the absence of any testimony

tending to show that it assumed its debts, obligations, and torts.   Section 422 reads:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission.   The action must be commenced within two years.   The damages cannot exceed $10,000, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Section 422a provides:                                r

"That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in § 422, of chapter 80, Laws of 1868, is or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in said § 422 may be brought by the widow, or, where there is no widow, by the next of kin of such deceased."

Said § 422a, being § 1 of chapter 131, Laws of 1889, is not subject to the constitutional objection urged against it, for it is not an amendment of § 422.   That sec-

2. Death by wrongful act —section 422a of civil code, valid.

tion is still in full force, and is not repealed, but stands as it did before the act of 1889 was passed.   If a personal representative has been appointed, he may still maintain the action, as provided in § 422, the same as if the act of 1889 had not passed, and hence the act of 1889 does not violate any provision of the constitution. (*The State, ex rel., v. Cross,* 38 Kas. 696.)   Section 422 gives an action for the exclusive benefit of the widow and children, if any, or next of kin, of the deceased person.   The action must be commenced within two years, and the damages cannot exceed $10,000.   That section requires that the personal representative of the deceased must bring the action, but it is not for his benefit, nor for the estate for which he acts.   Section 422a is supplemental.   The prior

49—52 KAS.

section grants a remedy to the families of persons killed by the wrongful act or omission of another; and § 422a merely provides how that action may be enforced for the benefit of families of persons so killed, when the residence of the deceased person, at the time of his death, is in another state, or when no personal representative has been appointed. It is an act to carry into force the cause of action created by § 422. It does not create a new cause of action. No amount of damages or any limitation is stated therein. It is simply a change of remedy. Its purpose is that the cause of action given by § 422 shall not lapse or be abortive by reason of the nonresidence of the deceased, or the nonappointment of a personal representative. Under both sections, the damages must inure to the exclusive benefit of the widow and children, if any, or next of kin of the deceased. If § 422 had given the personal representative or administrator a cause of action for his own benefit, or for the benefit of the estate for which he acts, there would be much force in the argument that § 422a does not affect this case. Therefore, although

3. Widow may maintain action, when.

Wm. Y. Berry was killed on December 24, 1887, his widow, under the provisions of § 422a, can maintain this action; in other words, can enforce the cause of action given by § 422 for the benefit of herself and children. (*Comm'rs of Sedgwick Co. v. Bunker*, 16 Kas. 498; Wade, Retroactive Law, §§ 24, 83, 214; Cooley, Const. Lim., star pages 361, 371, 373, 581.)

Paragraph 1268, Gen. Stat. of 1889, provides, among other things, that

"Any two or more railroad companies in this state . . . are hereby authorized to consolidate and form one company, . . . with all the rights powers, privileges, and immunities, and subject to all the obligations and liabilities to the state which belonged to or rested upon either of the companies making such consolidation."

It would not be a strained construction to hold that "all obligations," as used in the statute, compel the consolidated or new company to pay all claims, debts or other pecuniary

demands of each of the original companies. If obligations to the state only were intended, it would not have been necessary to have added the word "liabilities" to the state, because "lia- bility" is defined as "the state of being liable; as, the liability of an insurer; liability to the law; responsibility, accountableness, accountability, bounden duty;" and "obligation" is also defined as "that which obligates or constrains; the binding power of a promise or a contract; a bond with a condition annexed, and a penalty for nonfulfillment. In a larger sense, it is an acknowledgment of a duty to pay a certain sum or do a certain thing; responsibility, accountableness, bond of duty." To hold that "obligations" and "liabilities" are limited to the state only, would be to say that the legislature was guilty of a repetition of the same meaning in different words. On the other hand, if "obligations" and "liabilities" are both given their full force and effect, "obligations" may be construed as embracing all pecuniary duties in the way of being answerable for debts, demands, torts, etc.; "liabilities" may mean the burdens imposed by the constitution and the statutes; that is, the responsibility or bounden duty to the state under the constitution and statutes.

"Where a railroad company is consolidated with other railroad companies under a new name, it ceases to exist as a corporation, and an action brought by or against such railroad company before its consolidation cannot afterward be prosecuted by or against it in its original name." (*K. O. & T. Rly. Co. v. Smith*, 40 Kas. 192.)

The legislature could not have intended that a railroad company, by consolidating with other railroad companies, could thereby relieve itself of all of its debts, demands, and torts, and yet, if the theory of the railroad company is true, a railroad company, by becoming consolidated with another company, is discharged of its debts and obligations; at least, an action cannot be maintained against the old company, as it ceased to exist as a corporation after its consolidation; and, if the consolidated or new company is not answerable to creditors and others for the debts and other obligations of the

old company, there is no corporation in existence against which an action can be maintained.

But even if the statute is not construed as indicated, yet, under the authorities, where two or more railroad companies are consolidated under the statutes of the state, the new or consolidated company is answerable for the obligations of the old or constituent companies, including torts, in the absence of all evidence or stipulations to the contrary. Field on Corporations (§ 435) states:

4. Railroad companies— consolidation —liabilities.

"The general rule is, that the rights of creditors against the old companies revive against the new one created by the consolidation, as we have just noticed, and that it becomes substituted for the former ones. Provision is perhaps generally made by statute or by articles of agreement, as provided by law, for the payment of the creditors and the satisfaction of the obligations of the consolidating companies; and sometimes these provide that such companies shall continue for the purpose of adjusting their outstanding obligations, including their torts. But even where no such provision is made, but the consolidation is lawfully consummated, the new company has been held liable to all obligations of the former ones, from the very necessity of the case, and to prevent the failure of justice."

In *Thompson v. Abbott*, 61 Mo. 176, it was decided that

"Where one corporation goes entirely out of existence by being annexed to or merged in another, where no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property, and answerable for all the liabilities."

See, also, 3 Wood's Rly. Law, p. 1680, § 486; Mor. Corp., §§ 809, 955, 956; *C. R. I. & P. Rly. Co. v. Moffitt*, 75 Ill. 524.

The case of *Whipple v. U. P. Rly. Co.*, 28 Kas. 474, is cited, to the effect that the new or consolidated company cannot be held for the obligations of either of the constituent companies "only by and to the extent of an expressed stipulation." That language was used in the opinion of Mr. Justice BREWER, speaking for the court, upon the facts disclosed

in that case. The Kansas Pacific Railway Company was guilty of the wrong alleged in that case, and there was a sort of amalgamation or consolidation afterwards with the Union Pacific Railway Company under an act of congress, but not under the statutes of Kansas. In that case, it was shown upon the trial that the Kansas Pacific Railway Company did not cease to exist after its consolidation with the Union Pacific; that the old company "had not attempted to assume a new name, to change its old, or permit itself to be known by a new name," and that in the written agreement executed by the Union Pacific and the Kansas Pacific Railway Companies it was expressly provided:

"The new company hereby formed does not herein assume any separate or individual liability for the outstanding debts, obligations and liabilities of the respective constituent companies, whose several and separate existence as to third parties shall, as respects such debts, obligation and liabilities of every kind and nature, still continue, notwithstanding these articles of union and consolidation."

The Whipple case, therefore, does not decide, as claimed, that when two or more companies are consolidated, under the statutes of this state, the new company is not liable for the obligations of the former ones, unless an expressed stipulation assuming such obligations is shown to exist. That case was decided upon the facts disclosed, and not upon the absence of an agreement of the assumption of obligations. It was disposed of rightly upon the facts established, and we fully approve the decision.

Upon the whole record, our conclusion is, that the law of the case in the court below, and in this court, was and is with the plaintiff. Therefore the trial court committed error in refusing to receive the general verdict and the special findings of the jury, and in directing another verdict, and in rendering the judgment thereon. The judgment of the district court will be reversed, and, upon the special findings and the general verdict, judgment will be directed for the

plaintiff, Mrs. Helen A. Berry, and against the railroad company.

All the Justices concurring.