THE STATE ex rel. HOBART v. SMITH et al., Judges.

### In Banc, March 20, 1903.

1. **Certiorari:** TO COURT OF APPEALS. Where a court of appeals becomes vested with jurisdiction of an appeal it has the authority to render such judgment as in its opinion should have been given by the trial court, and its rulings, unless in excess of its jurisdiction, can not be reviewed by the Supreme Court by certiorari; nor in any other way, unless one of the judges of the Court of Appeals shall deem their decision in conflict with some previous decision of a Court of Appeals or of the Supreme Court.

2. ———: ———: MAKING NEW CONTRACT FOR PARTY: SURETY: CONSTITUTIONAL QUESTION. The Court of Appeals, in holding that relator in becoming surety for an obligation of one company to another, was bound to a consolidated company when that other company and a third company were consolidated into a new company, did not make a new contract for him, and thus violate the constitutional guarantee of due process of law and the equal protection of the law, but simply construed the bond which relator executed, and held that, under the statute, the consolidated company could recover on that bond. No constitutional question was so raised by that holding and no constitutional right so denied the surety, as to give this court a right by certiorari to review the decision of the Court of Appeals.

State ex rel. v. Smith.

3. ———: ———: WRONG DECISION. The Supreme Court will not compel a Court of Appeals to certify a cause to it because it may think its decision therein is wrong. If it had jurisdiction over the appeal its decision therein is final unless one of its Judges believes that such decision is in conflict with some prior decision of this court or of one of the Courts of Appeals.

4. ———: ———: DISSENT OF COURT OF APPEALS JUDGE. Nor will the Supreme Court, in order to compel the transfer of a cause, assume to say that the decision of the Court of Appeals is in conflict with some prior decision of the Supreme Court or one of the Courts of Appeals.

## Certiorari.

MOTION TO QUASH SUSTAINED.

*Thomas A. Sherwood* and *Adiel Sherwood* for relator.

(1) In this case, of course, no appeal lies from the Kansas City Court of Appeals to this court, nor writ of error from this court to that court. Where this is the case, the proper grounds existing, certiorari lies. Ex parte Couch, 14 Ark. 337; 4 Ency. Pl. and Pr., 34; State v. Moniteau Co. Court, 45 Mo. App. 387. And certiorari is the only remedy in an appellate court where no appeal lies in consequence of the amount involved being less than the minimum of appellate court's jurisdiction. State v. Payssan, 47 La. Ann. 1029. It lies wherever injustice has been done and authority used illegally. Duggin v. McGender, 12 Am. Dec. 527. The writ goes, if matter can not be reached by writ of error. Rex v. Inhab. Pennegoes, 1 Barn. & C. 142. It goes for any excess or lack of jurisdiction, or where an unauthorized penalty is inflicted. Ex parte Bradlaugh, 3 Q. B. D. 509; Ex parte Saunders (1895), 64 L. J. M. C. 273 (72 L. T. R. 568). It goes if the proceeding is without jurisdiction or where the proceeding is illegal or unknown to the law. Railroad v. Boy, 34 Fla. 389. And the effect of the operation of the writ is like that of a writ of error. Railroad v. Ryan, 31 W. Va. 364; Rail-

road v. Young, 96 Mo. 43; Farmington v. Comes, 112 Mass. 212; Groenvelt v. Barwell, 1 Salk. 144; State ex rel. v. Powers, 68 Mo. 323; Dryden v. Swinburne, 20 W. Va. 106; Harris v. Barber, 129 U. S. 369. This court has all the powers of the court of chancery and king's bench. State ex rel. v. Rombauer, 105 Mo. 103; State ex rel. v. Rombauer, 101 Mo. 499. The words "general superintending control" and "other remedial writs," in our Constitution have the same meaning at common law. Carnall v. Crawford Co., 11 Ark. 615. Even where certiorari and appeal were both forbidden, certiorari was issued to correct errors of jurisdiction and keep inferior tribunals within true bounds. King v. Justice of Somersetshire, 6 Dawe. & Ryl. 471. The rule in Missouri is the same, because the remedy by certiorari is provided in the organic law and is the common-law writ, there being no legislation to provide a legislative writ. Railroad v. Board, 64 Mo. 294. In this State the right to the remedy, like appeal, is a constitutional right. Railroad v. Brick Co. 85 Mo. 307. Or a writ of error. State v. Jim, 1 Mo. 147; Blount v. Sheppard, 1 Mo. 219; Calloway v. State, 1 Mo. 780; State ex rel. v. Springer, 134 Mo. 222; Milwaukee Iron Co. v. Schubel, 29 Wis. 444. (2) But certiorari is the appropriate remedy for another reason: By the ruling made by the Kansas City Court of Appeals, they not only went in direct conflict with all of the previous decisions of the Supreme Court on the subject of the liability of a surety, but in doing so that court violated the constitutional right of defendant to "due process of law," in that it so construed section 1334 as to make a new contract for surety Hobart, one he never made or in anywise assented to. His bond was made to the Springfield Electric Lighting Company alone, and neither the Legislature nor the courts could change that obligation, and the Kansas City Court of Appeals in so construing that section as aforesaid also deprived surety Hobart of "the equal protection of the laws,"

thus denying to him the benefits of the fourteenth amendment of the Federal Constitution. And where a constitutional question comes before the Kansas City Court of Appeals, this court has ruled that where that court by its action raises or creates a constitutional question, this court will by mandamus compel that court to transfer the case to this court, it being the final arbiter. State ex rel. v. Smith, 152 Mo. 444. Moreover section 1334, supra, says, "form one consolidated corporation holding and enjoying all the rights, privileges, power, franchises, and property belonging to each." Such language as this would not embrace or pass to a stranger a mere conditional obligation. In Walker v. Deaver, 79 Mo. 678, it was held that a covenant of warranty of the husband, "created an obligation, but not a debt." In England where the statute spoke only of "debts and actions of debt," it is held that an action could not be maintained against a devisee of one who had given "covenant for title." Wilson v. Knubley, 7 East 134; Bartlett v. Ball, 142 Mo. 37.

*Jas. R. Vaughan* for respondents.

The writ of certiorari issues only in cases where the court is proceeding without jurisdiction, or has exceeded its legitimate powers. The writ is not intended for or to be used as a mere substitute for an appeal or writ of error to correct errors of an inferior court. The petition for a writ in this case shows upon its face the matter about which appellant Hobart complains was an alleged error in the judgment and opinion of the Court of Appeals. It also clearly appears from its allegations, as likewise from the return, that the Court of Appeals had jurisdiction of the case of the lighting company against Hobart, and, hence, the writ was improvidently issued and should be quashed. State ex rel. v. Shelton, 154 Mo. 670; State ex rel. v. Gill, 137 Mo. 627; State ex rel. v. St. Louis Court of Appeals,

99 Mo. 221; State ex rel. v. Valliant, 123 Mo. 524.    The relator is in effect simply trying to have this court rehear the case of the lighting company against Hobart. The relator avers that the Kansas City Court of Appeals rendered a judgment in excess of its jurisdiction. The only judgment, however, which it rendered was simply an affirmance of the judgment of the Polk Circuit Court in a case involving the liability of a surety on a bond, wherein the amount claimed was less than $4,500, which was undoubtedly within its jurisdiction, and, hence, the judgment of affirmance was not in excess of its jurisdiction or legitimate powers. It certainly has the power to affirm judgments. The mere averment that the Kansas City Court of Appeals was without jurisdiction, or acted in excess of its jurisdiction, is a legal conclusion. The petition in its averment of facts shows exactly the contrary, and likewise shows that the averment of a want of jurisdiction is based upon such facts, and, hence, can avail nothing in the petition. The Kansas City Court of Appeals likewise had jurisdiction to pass upon section 2786, Revised Statutes 1889, and to construe it, and conceding for the purpose of the argument that it construed it wrongly, that did not give this court the right.to correct such an error in a certiorari proceeding. Nor would a wrong construction of the provisions of the Missouri Constitution, or the Constitution of the United States give this court the power to rehear and revise judgments of the Kansas City Court of Appeals. Constitutional questions come to this court from that only in one way; and that way is by transfer when it appears that the constitutional question was properly raised in the trial court. The contention that the decision and opinion of the Court of Appeals is contrary to decisions of both Courts of Appeals, and likewise of this court, can not avail the relator in this proceeding for the reason that the Constitution provides that cases must be brought to this court on such grounds, only when one

of the judges of the Court of Appeals shall so certify, and ask that the case be transferred.

BURGESS, J.—On June 23, 1902, relator sued out before one of the members of this court a writ of certiorari directed to respondents, who are the judges of the Kansas City Court of Appeals, returnable on October 14, 1902. The petition for said writ alleged that the judgment of that court in affirmance of the court below, rendered June 2, 1902, was against numerous decisions rendered by the St. Louis Court of Appeals, and by the Supreme Court; that the construction put upon section 2786, of article 6, chapter 42, Revised Statutes 1889, relating to the effect of the consolidation of business corporations, was contrary to the Federal and State Constitutions, guaranteeing due process of law, and prohibiting the States from impairing the obligations of contracts, and that said court had proceeded irregularly, and had exceeded its jurisdiction in a certain matter pending before them, wherein the Springfield Lighting Company was respondent and plaintiff, and Byron F. Hobart was appellant and defendant. The writ commanded respondents that they cause to be certified officially to the Supreme Court all of the pleadings in said cause with all their acts and proceedings in connection therewith, and that in the meantime they proceed no further therein. The writ was duly served upon respondents on June 24, 1902. Thereafter, on January 27, 1903, respondents filed their motion to quash the writ and dismiss the cause upon the following grounds:

1. Because the writ was improvidently issued.

2. Because upon the petition and return in this case it fully appears that the Kansas City Court of Appeals had full jurisdiction under the Constitution and laws of this State to adjudicate upon the matters involved in said case of the Lighting Company v. Byron F. Hobart; acted throughout within its jurisdiction, and that there is no ground whatever upon which to base this proceeding.

3.   Because the judgment and opinion of the Kansas City Court of Appeals was rendered and concurred in by all the members of said court; that no one of said judges certified or claimed that such decision was contrary to any opinion of either of the Courts of Appeals in this State, or of this court; that there was no constitutional question raised or preserved in the trial court, and hence the judgment and opinion of the Kansas City Court of Appeals in that case is not reviewable by this court for any mere alleged errors of law committed by it.

4.   Because the record in this case shows that the Kansas City Court of Appeals proceeded regularly within its jurisdiction in said cause, and that its action is not reviewable upon its merits or upon the law by this court; that review of the action of the Kansas City Court of Appeals in this proceeding, which in effect would constitute an appeal to this court, can not be had through certiorari in cases like this where the laws of the State expressly deny an appeal and make the decision of the Kansas City Court of Appeals final.

The petition for the writ sets out the entire record in the original case, as well also as the opinion filed in the case by the Court of Appeals, but for the purposes of a determination of this proceeding it is only necessary to set out that opinion, as it contains a full and fair statement of the facts in the original case, and the reasons for the conclusions reached.   It is as follows:

"It appears from the allegations of the plaintiff's petition that 'The Springfield Electric Lighting Company,' the 'Springfield Gas Light Company,' and 'Metropolitan Electric Railway Company' were each a corporation created and organized under the provisions of article 8, chapter 42, Revised Statutes 1889, and that the first two of them were, on June 30, 1893, under the authority conferred by section 2786 of said article, consolidated and united under the name of the Springfield Lighting Company, the plaintiff.   It further appears

that sometime prior to the said consolidation, the said Metropolitan Electric Railway Company entered into a written contract with the said Springfield Electric Lighting Company whereby the former agreed and bound itself to furnish and supply the latter power to operate its lighting apparatus, as therein specified, for a period of ten years. It still further appears that at the time of the entering into said contract, the said Metropolitan Electric Railway Company and Hobart—the defendant—entered into a certain bond, by which they bound themselves to pay the said Springfield Electric Lighting Company the sum of three thousand dollars, conditioned that if said Metropolitan Electric Railway Company should do and perform, on its part, all the conditions required of it by the terms of said contract fully and completely, then the said bond was to be void, otherwise to remain in full force. It is also further disclosed by the allegations of the petition that at the time the said contract was entered into, the Springfield Electric Lighting Company was engaged in furnishing light both to the city and to individuals therein, and that after the creation of the consolidated company, the plaintiff, 'holding and enjoying all the rights, privileges, power, franchises and property, belonging to each of the corporations out of which it was formed,' continued to furnish light to the said city and individuals therein, as the Springfield Electric Lighting Company had done, and that the said Metropolitan Electric Railway Company supplied it with power, and otherwise complied with the requirements of said contract as it had done before the consolidation, until a certain named date, when it refused further compliance, etc. The defendant interposed a demurrer to the petition on the ground that it shows upon its face that the alleged bond, upon which defendant was security, was given to the Springfield Electric Lighting Company as obligee, while the plaintiff in this case is a separate and different legal entity. The court overruled the demurrer,

and the defendant having elected to stand thereon, and declining to plead further, judgment was given for the plaintiff.

"The defendant, by his appeal, has brought before us for review the action of the trial court in overruling his demurrer to the petition. In support of the ground of such demurrer, the defendant contends (1), that the defendant, as surety, bound himself to 'indemnify the Springfield Electric Lighting Company for the failure of the Metropolitan Electric Railway Company to supply electric power to that company, but did not bind himself to indemnify the plaintiff, another and different legal entity,' and (2), that by reason of the amalgamation of the Springfield Electric Lighting Company with the Springfield Gas Light Company, and by which another company was formed, it was made impossible for the Metropolitan Electric Railway Company to furnish electric power to the Springfield Electric Lighting Company. If these contentions can be sustained, it is quite manifest that the demurrer should have been sustained, and whether or not they should be, is to be determined by the construction placed upon the contract of suretyship.

"I. It appears that the rule prevailing in respect to ordinary contracts of suretyship is that the surety is the favorite of the law, and has the right to stand upon the strict terms of his obligation. [Brandt on Suretyship, sec. 97; Baylies on Sureties, 144, 145, 260.] He can not be carried beyond his contract; the contract made by the parties must be judged of and not another substituted in its stead; it can not be varied without his consent, and a surety for a definite engagement shall not be extended to an indefinite one. [Ludlow v. Simond, 2 Caines Cases 1.]

"It was declared by the Supreme Court of the United States in Miller v. Stewart, 9 Wheat. 680, that 'nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety

is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient that he sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is 'fatal.'

"In State v. Medary, 17 Ohio 565, it is said that, 'The bond speaks for itself, and the law is that it shall so speak, and that the liability of the surety is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If the bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way, in order that it may prevail.'

"The two last above excerpts were quoted with approval in Nofsinger v. Hartnett, 84 Mo. 549. And the case from which the former (Miller v. Stewart) is quoted has been referred to approvingly in Lionberger v. Krieger, 88 Mo. 160, and in Blair v. Ins. Co., 10 Mo. 560.

"The rule of *strictissimi juris,* as applicable to the interpretation of the contracts of sureties, was first announced in this State in the opinion of Judge SCOTT in Blair v. Ins. Co., supra, and all the subsequent cases, cited in defendant's brief, have uniformly and unvaryingly followed it, so that it—the rule—may be said to have become firmly established in the jurisprudence of the State. And while the contract of a surety is to be construed *strictissimi juris,* which means that it can not be altered without his consent, and that he is only bound to the extent that he thereby agreed to be so bound, but, aside from this, it must be construed like any other contract, *id est,* according to the intention of

the parties.   [Beers v. Wolf, 116 Mo. 179; Harburg v. Kumpf, 151 Mo. 16.]

"II.   Up to the time of the consolidation there was a complete performance of the contract on the part of the Metropolitan Electric Railway Company.   The non-compliance or default complained of took place after such consolidation, so that the question arising, and decisive of the case is, whether or not the defendant under his contract of suretyship is bound to indemnify the consolidated corporation—the plaintiff—against any damage or loss sustained by it in consequence of the failure of the Metropolitan Electric Railway Company to furnish it the electric power which it—the said Metropolitan Electric Railway Company—had agreed to furnish under its contract with the Springfield Electric Lighting Company.

" A corporation of the class to which the Springfield Electric Lighting Company belonged, may, under the statute (sec. 971, R. S. 1899) change its name without in 'anywise affecting its rights, privileges or liabilities;' but we have no such case here.   But on the contrary the plaintiff is a legal entity created by the consolidation (under the statute, sec. 2786, R. S. 1889; sec. 1334, R. S. 1899) of two corporations whose business was of the same general nature.   The plaintiff was the issue of this union, and can not be said to be either the one or the other of them any more than a child can be said to be either its father or mother.   And the section of the statute last cited declares that the result of such consolidation shall be to create 'one consolidated corporation, holding and enjoying all the rights, privileges, power, franchises and property belonging to each.' The effect of the agreement of consolidation under the statute (sec. 1334) is, as we think, to transfer all the 'rights, privileges and property' of each of the consolidating corporations to the new corporation.   Included in this transfer was the contract between the electric railway and the electric light company, which

carried with it, as an incident, the undertaking of the surety, the defendant, even though said undertaking was not in express terms transferred with the said principal obligation. The manifest purpose of the statute in such cases is to give the consolidated corporation the benefit of all the rights of every kind, including such as that here, and a right of action thereon. And this construction of the statute finds support in adjudications somewhat similar to this: Cady v. Sheldon, 38 Barb. 103; Claflin v. Ostrom, 54 N. Y. 581; Craig v. Parkis, 40 N. Y. 181; Waldron v. Harring, 28 Mich. 493; Bank v. Carpenter, 41 Iowa 518; R. S. 1899, sec. 540, and cases cited in note b.

"In an English case (Railway v. Cochrane, 9 Wels. Hurl. & Gor. 197) where a surety executed a bond conditioned for the faithful service of a clerk of a railway company and during the continuance of the service that company and another company were consolidated under a statute which provided that all bonds, etc., entered into in favor of the old companies should be effectual in favor of the new, it was held that the surety was liable to the latter for the default of the clerk after the consolidation, since the undertaking of the surety was in no way enlarged by such consolidation.

"It has been held in this State that where a consolidation of two or more railway companies had taken place under statutes somewhat analogous to that here, the effect of such consolidation was to dissolve the corporations so consolidated and to create a new corporation. [State ex rel. v. Lesueur, 145 Mo. 322; State ex rel. v. Railroad, 99 Mo. 41; Evans v. Railroad, 106 Mo. 594.] Ordinarily the effect of the consolidation of two or more corporations into one would be to dissolve all of them and create a new corporation, unless there be something in the statute authorizing the consolidation providing that it shall have a different effect.

"In Kinion v. Railroad, 39 Mo. App. 382, it was said: 'By the contract of consolidation all property

belonging to the old companies, including their corporate privileges and franchises, are transferred to the consolidated company, and there is nothing left to sustain the corporate life of the original corporation. . . . The old companies by their voluntary act completely merge their separate corporate existence, and, strictly speaking, a new entity is thereby formed. . . . Literally speaking, it is a new corporation, but substantially it is but the continuation of the old companies under the new name. [Eans v. Bank, 79 Mo. 182.] . . . Technically speaking, however, and for general purposes, it may be conceded that the consolidated company is a new corporation; but, touching the business of the old companies and the rights of their respective creditors, we think the consolidated company ought to be regarded as the continuation of the old companies under a new name, and that, to that extent, it ought not to be regarded as a new corporation.' And a similar statement of the law is to be found in State ex rel. v. Garroutte, 67 Mo. 445, and in section 956 of 2 Morawetz on Private Corporations.

"In Kinion v. Railroad, 39 Mo. App. 574, it was said: 'An examination of the decisions will, we think, show that, in a judicial sense, and so far as regards any right of action that existed against either of the corporations prior to their being so united, the effect of the consolidation is not more than a change of name. . . . The new corporation succeeds to the proprietary rights of the old, without any new conveyances.' [Thompson v. Abbott, 61 Mo. 176; State ex rel. v. Greene County, 54 Mo. 540; Berry v. Railroad, 52 Kan. 759.]

"In 1 Thompson on Corporations, section 365, it is stated to be the general rule that the new company succeeds to the rights, duties, obligations and liabilities of the constituent companies whether arising *ex contractu* or *ex delicto*. And so it has been held that such company succeeds to whatever rights each of the old companies possessed in respect to municipal aid, and

that where such aid has been voted to either of the constituent companies before the consolidation, it was entitled to the bonds. [Smith v. Clark County, 54 Mo. 58; State ex rel. v. Greene County, 54 Mo. 540; Railroad v. Marion County, 36 Mo. 294; Henry County v. Nicolay, 95 U. S. 619; Callaway Co. v. Foster, 93 U. S. 567; Scotland Co. v. Thomas, 94 U. S. 682.]

"And it has been held, further, that the new company is the heir to the obligations of the old, and if the former refuse to carry out the obligations of the latter, the obligee can maintain an action against it for resulting damages. [Ins. Co. v. Railroad, 149 Mass. 214; 1 Thompson on Private Corp., sec. 382.]

"No reason is seen why a consolidated business corporation created under said section, 1334, Revised Statutes 1899, section 2786, Revised Statutes 1889, will not 'hold and enjoy all the rights, privileges, franchises and property,' and be subject to all the liabilities to the same extent as a railway company which is the result of the amalgamation of two or more companies under section 2567, Revised Statutes 1889, nor why what has been said by us in relation to the status of the latter will not apply as well to the former.

"From an examination of the numerous authorities to which we have been cited by counsel, we can reach no other conclusion than that where two or more business companies are consolidated under section 1334 the constituent corporations become dissolved or extinguished, and that the amalgamated corporation is a new corporation, but that touching the business of the old corporations, and as to their respective debtors and creditors, the consolidated company is to be regarded as the continuation of the old companies under a new name, and that as to the defendant, it is to be regarded as if it had been named as obligee in the bond in the first instance. The bond here must be understood and read in the light of the existing law. To consolidate is one of the statutory powers of business corporations, and parties con-

tracting with them are presumed to know that such is the law of their creation. [Lionberger v. Krieger, 88 Mo. 160; Hanna v. Railroad, 20 Ind. 30.]

"If the statute relating to the consolidation of business corporations were read into the contract of suretyship under consideration, as we think it should be (Caston v. Stafford, 92 Mo. App. 182), then there is left to the defendant little or no ground for complaint. He could not then be heard to claim that the consolidation was not contemplated by the parties, or provided for in the contract.

"When we view the contract of suretyship in its entirety, that is to say, with the provision of section 1334, Revised Statutes 1899, read into it, we experience no difficulty in reaching the conclusion that the obligation of the defendant extended to the plaintiff, and covered the default of the Metropolitan Electric Railway Company occurring after the consolidation. By such contract it was, as we think, understood that the obligee therein was accorded the right and privilege to do the things authorized by that part of such contract as was supplied by the statute, or, in other words, the obligor by the contract in effect said to the obligee, 'If you, in the course of your business, deem it for your interest to consolidate with another company and continue in business under a new name, you hereby have my consent to do so.' The consolidation and merger of the obligee may, therefore, be said to have been done with the consent and by the authority of the defendant. It results that if there was an alteration in the contract as to the name of the obligee, brought about in that way, it was made with the consent of the obligor therein given.

"It seems that after the consolidation took place the Metropolitan Electric Railway Company continued to furnish electric power to the new company as it had to the old. It not only supplied power, but made out bills and collected the compensation allowed by the contract of the new company just as it had of the old.

These acts of the parties afford a basis on which to rest the construction of the contract as made by us.    [Wharton on Contracts, sec. 653.]

"Crane v. Specht, 39 Neb. 123, was not where the change in the name of the obligee was brought about by a consolidation of two corporations.    The change was doubtless accomplished under a statute like our sec. 971, Revised Statutes 1899.    It was held that the change in the name of the obligee corporation deprived it of the right to recover on the contract of guaranty given it by the defendant in its former name.    Whether or not that case was rightly decided we need not stop to consider, since it does not appear that there were any such statutory provisions applicable to it as those which have largely influenced our decision in this.

"The case most nearly like that before us is that of Railroad v. Hawkins, 149 Pa. St. 121.    It was where one railway company, which had leased another, took a bond with sureties from one of its employees; and subsequently the two companies were consolidated under the statute, and, under a new name, the same business was continued.    It was held that the sureties were liable for employee's defalcation after the consolidation.

"After a full examination of the points and authorities urged upon our attention by the defendant, we have not been persuaded that the objections suggested in his demurrer to the plaintiff's petition were well taken, and it therefore follows that the judgment must be affirmed."

I.

The first question with which we are confronted is as to whether or not certiorari can be resorted to for the purpose of having this court quash the judgment of the Court of Appeals and remit the record to the circuit court with instructions to sustain the demurrer to the petition.

While by the Constitution (section 3 of article 6, and section 8 of article 6) the Supreme Court has a superintending control of the Courts of Appeals and the power to issue writs of mandamus, quo warranto, certiorari and other original remedial writs and to hear and determine the same, as a general rule certiorari only lies where a writ of error or an appeal will not lie; but does not lie as a matter of course in all cases where an appeal or writ of error will not lie.

In this case neither a writ of error nor an appeal would lie, so that the judgment of the Court of Appeals is conclusive upon the relator unless the action of that court can be reviewed by this proceeding, and, if erroneous, corrected. Certiorari "only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued and which are *jurisdictional* in their nature" (State ex rel. Teasdale v. Smith, 101 Mo. 174; Railroad v. State Board, 64 Mo. 294; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v. Dobson, 135 Mo. 1); and no error or defect appears from the record in this case. That the Court of Appeals had the sole and exclusive jurisdiction to hear and determine the appeal in the case in question there can be no doubt. No other court had jurisdiction of that appeal, and when that court became vested with jurisdiction of the appeal it unquestionably had the right to render such judgment as in its opinion should have been given by the trial court (State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216) even though erroneous, and, its ruling, unless in excess of its jurisdiction, can not be reviewed by certiorari. The only conditions upon which causes pending in the Courts of Appeals, of which they have jurisdiction, can be certified to the Supreme Court, are those provided for by section 6, article 6, of the amendment to the Constitution entitled "Courts of Appeals," which reads as follows:

"When any one of said Courts of Appeals shall in

any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said Courts of Appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Courts of Appeals.''

It is obvious that the case does not fall within either of those conditions.

But the contention of the relator is that the decision of the court:

1.   Makes a contract for the appellant which the appellant never made, and after making it by construction made a new contract for the appellant, which he never made and never intended to make; the court by its opinion and decision enforces that contract against the appellant, and thereby denies him due process of law, and equal protection of the law, violating section 30, article 2 of the Constitution of Missouri and the fourteenth amendment of the Constitution of the United States.

2.   That the decision is in direct conflict with numerous decisions of this court and of the Courts of Appeals, citing them.

3.   Because this court, in rendering its opinion and deciding this case, has not complied with the requirements of the Missouri Constitution, which vests jurisdiction in this court; has not in deciding this case and writing its opinion and entering its judgment herein, followed the last controlling decision of the Supreme Court of Missouri; and this court has, in deciding this case, made a decision contrary to the decision upon simi-

lar facts and similar question of law decided to the contrary by the St. Louis Court of Appeals, and for both of these reasons this case should be transferred to the Supreme Court for final determination.

4. For the reason that this court holds that the provision of section 2786 of the Revised Statutes of 1889, which declares that the new corporation should have "all the right, privileges, powers, franchises and properties belonging to each," transfers to the consolidated corporation the right of one of the corporations to require a surety upon a bond running in favor of that corporation to respond to the consolidated corporation when at the time of the consolidation of the two corporations there was no default upon the contract which the surety's obligation was given to secure, and thereby, without any authority, we submit, to justify such action, this court has made a contract for the surety, which the surety never made, never intended to make, and has made the surety liable to a corporation which was not in existence at the time the surety signed his obligation, and compel the surety to respond to a person to whom he never agreed to become liable, and with whom he never made any contract, and therefore the court denies to the surety, the appellant in this case, due process of law, and the equal protection of the law, and thereby deprives him of his property, contrary to the Constitution of the United States, and of the State of Missouri, and particularly contrary to section 30 of article 2 of the Missouri Constitution and the fourteenth amendment of the Constitution of the United States, and thereby impairs the obligation of the contract between the surety, the appellant in this case, and the Springfield Electric Lighting Company, the corporation to which the surety agreed to become liable in the event that the Metropolitan Electric Railway Company did not perform the contract, which the surety's obligation was given to secure, and contrary to the provision of the Constitution of the United States, which prohibits

the impairment, by any State or instrumentality of the State, of the obligation of contracts, in short, this court, by its decision in this case, has made a contract for the surety, and is proceeding to enforce that contract, i. e. to say, a contract which the surety never made, and never intended to make, and a contract not executed within the terms of section 2786 of the Revised Statutes of 1889, which clearly and plainly excludes any intention or purpose of the Legislature of this State to include among the rights which pass to the consolidated company, the obligation of the surety and one of the companies which united to form the consolidated company, even if under the Constitution of the United States and of the State of Missouri such a contract made by legislation would or could be upheld.

5.    Because this court cites as an authority the case of Railroad v. Cochrane, 9 Wels. Hurl. & Gor. 197, an English case, which was determined solely upon the provision of an act of Parliament, which expressly provided that sureties and guarantors of any one of the companies which were authorized to be consolidated should be liable to the consolidated corporation (authorized by said act) with the same force and effect as if such obligation had been made directly to the consolidated corporation, when it is manifest that no act of any Legislature in the United States would be constitutional which made any such provision, for the plain reason that such an act would impair the obligation of the surety's contract, and would be making a contract for him which he never made and never intended to make.

6.    Because this court holds that the surety, the appellant herein, was presumed to know of the statute, which permitted the consolidation of business corporations, and for that reason must be conclusively presumed to have consented at the outset to the consolidation, which was afterwards made, and in addition is conclusively presumed to have consented to the consolidation which produced the Springfield Lighting Company, the

Vol 173 mo—27

plaintiff in this case, and must be conclusively presumed to have consented to become liable to the new company by a default which occurred long after the consolidation. Manifestly no such construction of the liability of the surety or such statute can be sound as a matter of law. Using the same chain of reasoning, if an obligation in favor of A. B. an individual, should be sued upon by a partnership, which was afterwards formed by A. B., simply because the surety must be conclusively presumed to know the law and to know that A. B., the obligee named in this obligation, could enter into a partnership agreement with C. D. under the name of C. D. & Co., and thereafter could enforce the obligation running in favor of A. B. in a suit brought by A. B. and C. D. in the name of the partnership.

7.   Because the court holds that the mere fact that power was furnished by the Metropolitan Electric Railway Company to the plant in this case, after the consolidation, is a construction of the contract made by the surety, one as a matter of fact and one as a matter of law.   The surety had nothing whatever to do with the acts of the Metropolitan Electric Railway Company, the plaintiff in this case, after the consolidation of the Springfield Electric Lighting Company and the Springfield Gas Light Company, whose consolidation brought about the new corporation, the plaintiff in this case.

8.   The damages were assessed without a jury or its waiver and the record so shows.

It is obvious from the opinion that no constitutional question was raised or passed upon by that court.   But it is argued that the court in its decision makes a contract for the appellant which he never made and never intended to make, then enforces it against him, and thereby denies him due process of law, and equal protection of the laws, violating section 30, article 2, of the Constitution of Missouri and the fourteenth amendment of the Constitution of the United States.   It is

manifest, however, that this is a misinterpretation of the opinion and that it does nothing of the sort, but only construes the contract described in the petition, and holds that the bond sued upon which was executed by the Metropolitan Electric Railway Company with Hobart as surety to the Springfield Electric Lighting Company passed, under the provisions of section 1334, Revised Statutes 1899, to the Springfield Lighting Company, upon the consolidation of the Springfield Electric Lighting Company and the Springfield Gas Light Company under the name of the Springfield Lighting Company on the 30th day of June, 1893.

It is true the court said *arguendo* in the course of the opinion:

"If the statute relating to the consolidation of business corporations were read into the contract of suretyship under consideration, as we think it should be (Caston v. Stafford, 92 Mo. App. 182), then there is left to the defendant litttle or no ground for complaint. He could not then be heard to claim that the consolidation was not contemplated by the parties or provided for in the contract. When we view the contract of suretyship in its entirety, that is to say, with the provision of section 1334, Revised Statutes 1899, read into it, we experience no difficulty in reaching the conclusion that the obligation of the defendant extended to the plaintiff, and covered the default of the Metropolitan Electric Railway Company occurring after the consolidation. By such contract it was, we think, understood that the obligee therein was accorded the right and privilege to do the things authorized by that part of such contract as was supplied by the statute, or in other words, the obligor by the contract in effect said to the obligee, 'If you, in the course of your buisness, deem it for your interest to consolidate with another company and continue in business under a new name, you hereby have my consent to do so.' The consolidation and merger of the obligee

may, therefore, be said to have been done with the con-
sent and by the authority of the defendant. It results
that if there was an alteration in the contract as to the
name of the obligee, brought about in that way, it was
made with the consent of the obligor therein given.''

This was not, however, making a new contract for
relator, nor construing into the one executed by him
a new or additional condition or obligation, but simply
an interpretation of the contract in connection with the
statute which was in force at the time the contract was
entered into, and became a part and parcel thereof, as
much so as if it had been incorporated therein. [Havens
v. Fire Insurance Co., 123 Mo. 403; Daggs v. Ins. Co.,
136 Mo. 382; State ex rel. v. Laclede Gas Light Co., 102
Mo. 472; Christian v. Insurance Co., 143 Mo. 460; State
ex rel. v. Railroad, 153 Mo. 157].

Nor is there anything said in the opinion which by
any fair interpretation can be construed as denying
defendant due process of law, or equal protection of the
law, or that infringes upon rights guaranteed to him by
the Constitution of Missouri or of the United States, or
that the court proceeded without or in excess of its juris-
diction.

Relator relies upon the case of State ex rel. v.
Smith, 152 Mo. 444, as sustaining his contention, but
that case only holds that as a constitutional question was
necessarily before the Court of Appeals for its interpre-
tation, and through that interpretation the conclusion
could only have been reached, the appeal was to the
Supreme Court, and as that court refused to certify the
case to the Supreme Court upon proper application,
this court would by mandamus compel it to do so. But,
as we have said, no such question is presented by the
decision of the Court of Appeals under consideration,
and therefore that case is not in point.

Nor will the fact, even if true, that the decision is
in conflict with decisions of the Supreme Court, and the
Courts of Appeals, or has not followed the controlling

decision of the Supreme Court, or that it committed error in any other respect in the absence of the want of or in excess of its jurisdiction, avail relator in this proceeding.

It is not for us to say, nor do we say, whether or not the Court of Appeals was correct in its conclusions; but whether right or wrong, the case is not before us for review. If those courts can be compelled by writ of certiorari or otherwise to send to this court the records in cases in which they have delivered opinions for review upon grounds such as are shown to exist in this proceeding, it is difficult to conceive of a case in which they could not be required to do so, and thus disregard the spirit and intention of section 6, article 6, of the Constitution, supra, and the laws organizing these courts by which they are made the final arbiters in all cases that come before them of which they have jurisdiction, except as otherwise provided by said section 6, article 6, of the Constitution.

Our conclusion is that the writ was improvidently granted, and that the motion to quash should be sustained. It is so ordered. All concur.